UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| W.O., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil No. 3:20-cv-00023-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| ANDREW G. BESHEAR, in his Official | ) | **&** |
| Capacity as Governor of Kentucky, *et al.*, | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

**\*\*\*   \*\*\*   \*\*\*   \*\*\***

The coronavirus pandemic has brought about a virtually unprecedented time for our nation. And this circumstance raises a unique legal question: can the Kentucky Attorney General sue the Governor of Kentucky to enjoin the enforcement of certain executive orders? On April 2, 2020, then-plaintiff Allison Alessandro[1] filed suit seeking "injunctive and declaratory relief against Governor Andrew Beshear and Attorney General Daniel Cameron" after Governor Beshear issued executive orders instructing Kentuckians to refrain from interstate travel, except in limited circumstances. [*See* R. 1.] Attorney General Cameron now moves to switch to the other side of the "v." and realign as a plaintiff as, after deliberation, he agrees with Plaintiffs' assessment that the Executive Orders are unconstitutional. [R. 23.] For the reasons that follow, the Attorney General's motion will be **GRANTED**.

**I**

To curb the spread of the coronavirus in the Commonwealth of Kentucky, Governor Andrew Beshear has issued a series of executive orders limiting social interaction between

---

[1] On April 7, 2020, Ms. Alessandro filed an amended complaint adding two new plaintiffs, M.O. and W.O., and then voluntarily dismissed her claims, apparently in part due to backlash from the public related to the case. [R. 9; R. 12.]

Kentuckians.  On March 30, 2020, as part of these efforts, Governor Beshear issued an executive

order instructing Kentuckians to refrain from interstate travel except "when required by

employment; to obtain groceries, medicine, or other necessary supplies; to seek or obtain care by

a licensed healthcare provider; to provide care for the elderly, minors, dependents, persons with

disabilities, or other vulnerable persons; or when required by court order."  Executive Order

2020-258.  Those residents returning to Kentucky from out of state "must . . . self-quarantine for

fourteen days."  *Id.*  Days later, Governor Beshear executed Executive Order 2020-266 which

further restricts travel into Kentucky.  Pursuant to that order, "residents of any state other than

the Commonwealth of Kentucky may not travel into Kentucky," except for the same limited

reasons allowed under Executive Order 2020-258.  Out-of-state residents who enter Kentucky

despite the order "must upon their entry into Kentucky self-quarantine for 14 days."

The Attorney General now seeks to realign and challenge Executive Orders 2020-258 and

2020-266 (hereinafter "Travel Orders") on behalf of the people of Kentucky.[2]  [R. 23 at 2.]

Governor Beshear opposes this maneuver, arguing there is no legal mechanism which allows for

this type of realignment.  [R. 31.]  This unique disagreement can only be resolved after careful

consideration of the relevant procedural rules and governmental immunity doctrines.

## II

## A

Before the Court can address whether Attorney General Cameron can proceed as a

Plaintiff, the first procedural question to be answered is whether he is a proper defendant in this

action.  The Attorney General was originally named and served as a defendant in his official

---

[2] In addition to the Attorney General's motion to realign, also pending before the Court is Plaintiffs W.O.
and M.O.'s Motion for Preliminary Injunction.  [R. 11.]  That motion, which asks the Court to enjoin the
enforcement of the Travel Orders, will be addressed by a separate order.

capacity.  [*See* R. 9 at 4.]  Prior to filing the present motion to realign, Attorney General

Cameron argued in his response to Plaintiffs' preliminary injunction that he was not a proper

defendant.  [R. 17 at 1.]  The Court agrees.  The Attorney General's role as a Defendant is

minimal and he is immune from Plaintiffs' claims under the Eleventh Amendment of the United

States Constitution.  *Id.*

## 1

In general, "a suit against a state official in his or her official capacity is not a suit against

the official but rather is a suit against the official's office."  *Will v. Mich. Dep't of State Police*,

491 U.S. 58 (1989).  Put simply, lawsuits against state officials are treated as lawsuits against the

State itself.  *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985).  Many suits against a State are

barred by the State's Eleventh Amendment sovereign immunity.  *See Will*, 491 U.S. at

66.  However, an exception to Eleventh Amendment sovereign immunity exists pursuant to the

doctrine set forth in *Ex parte Young*, 209 U.S. 123 (1908).  Under *Ex parte Young*,

individuals who, as officers of the state, are clothed with some duty in regard to the enforcement

of the laws of the state, and who threaten and are about to commence criminal or civil

proceedings to enforce an unconstitutional act against certain parties may be enjoined by a

federal court from doing so.  209 U.S. at 155–56.

The Sixth Circuit has indicated that courts "have not read *Young* expansively."

*Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1415 (1996).  According to

the Sixth Circuit, "*Young* does not apply when a defendant state official has neither enforced nor

threatened to enforce the allegedly unconstitutional state statute."  *Id*.  Under *Young*, a state actor

"must have some connection with the enforcement" of the allegedly unconstitutional act, and this

connection must be "more than a bare connection."  *Young*, 209 U.S. at 157; *Russell v.*

3

*Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015). "General authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law." *Russell*, 784 F.3d at 1048 (quoting *1st Westco Corp. v. Sch. Dist. Of Philadelphia*, 6 F.3d 108, 113 (3rd Cir. 1993)).

Attorney General Cameron has no connection with the enforcement of the Travel Orders simply because he is the Attorney General. As contemplated in *Ex parte Young*, Attorney Generals are not "connected" with the enforcement of the act simply because of their general duty to execute all laws. 209 U.S. at 157. It is clear that Governor Beshear is the party that issued the Governor's Travel Order, not Attorney General Cameron. Also, the Attorney General has not enforced the Governor's Travel Order or shown any desire to do so.

True, the Attorney General is "the chief law officer of the Commonwealth" with a responsibility to "exercise all common law duties and authority pertaining to the office of the Attorney General under the common law, except when modified by statutory enactment." KRS § 15.020. Kentucky law permits the Attorney General to defend a statute's constitutional validity, but it also gives him discretion. KRS § 418.075(1); *Commonwealth v. Hamilton*, 411 S.W.3d 741, 751 (Ky. 2013). Further, Kentucky law does not require the Attorney General to represent the Commonwealth "where it is made the duty of the Commonwealth's attorney or county attorney" instead. KRS § 15.020. The Attorney General admits that his duty includes defending the constitutionality of state statutes under KRS 418.075(1), but "Plaintiffs do not challenge the validity of one of the Commonwealth's statutes." [R. 17 at 6.] Instead, Plaintiffs challenge the constitutionality of the Governor's actions. *Id.*

Further, the Governor derives his emergency powers under KRS Chapter 39A, which does not specifically place enforcement of its provisions on any specific office, including the

4

Attorney General.  *Id.*  In fact, it is the local prosecutors who have the ability and authority to prosecute a violation of the Governor's Travel Order.  *See* KRS 15.725.  Attorney General Cameron would only have the ability to prosecute a violation in this matter if a local prosecutor, the Governor, a court, grandy jury, sheriff, mayor, or majority of a city legislative body would request his assistance.  *See* KRS §§ 15.190; 15.200.  A request of this nature has yet to occur.

In addition, Attorney General Cameron has made clear throughout this suit that he does not intend to bring a civil enforcement action against any individual for violating the Governor's Travel Orders.  [R. 17 at 8.]  This would be a rare occurrence as "the Attorney General does not ordinarily bring civil suits whenever an individual is suspected of violating a law or executive order."  *Id.*  And, as represented to the Court, the Governor has not contacted Attorney General Cameron for his assistance in enforcing the Travel Orders.  [R. 21.]  Therefore, there is no indication or evidence that Attorney General Cameron has threatened to bring a civil suit enforcing the Governor's Travel Orders.

Overall, the Court finds the Attorney General's relationship with the challenged Travel Orders too attenuated to trigger the *Ex parte Young* exception to the Attorney General's Eleventh Amendment immunity.  In contrast, *McNeilus Truck & Manufacturing, Inc. v. Ohio ex rel. Montgomery*, 226 F.3d 429 (6th Cir. 2000) affirmed the proposition that *Young* "does not apply when the defendant official has neither enforced nor threatened to enforce" the challenged statute.  *McNeilus* also held that the Attorney General is a proper defendant "[w]here there is an imminent threat of enforcement."  *Id.* at 437.  There, the Attorney General helped enforce portions of the statute, and the other defendant had threatened to withdraw the plaintiff's license. So, the Court held both the Attorney General and the other defendant could be sued.  Unlike *McNeilus*, there is no evidence of a similar "imminent threat" of prosecution by the Attorney

General in the present case.  Attorney General Cameron has not enforced or even threatened to enforce the Travel Orders at issue.  In fact, he disagrees with the Governor and is now arguing that the Travel Orders are unconstitutional.  The Court therefore holds that the Attorney General is not a proper party to this action and must be dismissed as a defendant.

**B**

The Court can now address the more nuanced question before the Court: can the Attorney General realign as a Plaintiff in this case?  As evidenced by the parties' briefing, there is no established standard to guide the Court's determination of whether to grant the present motion to realign.  Typically, a party seeks to realign for reasons other than a simple realization that its "interests coincide with" the opposing party.  For example, courts often grant motions for realignment when necessary to evaluate diversity jurisdiction, *see U.S. Fid. & Guar. Co. v. Thomas Solvent Co.*, 955 F.2d 1085, 1089 (6th Cir. 1992), or, in other instances, in order to control the order of proof.  *See Moreau v. Oppenheim*, 663 F.2d 1300, 1310 (6th Cir. 1981).  That type of procedural maneuvering is clearly distinguishable from the circumstances before this Court and, as such, the standards set forth in those cases are inapplicable.

In this case, the Court has already found that Attorney General Cameron is not a proper Defendant.  So, by way of his motion to realign, the Attorney General is, in essence, simply seeking to intervene as a Plaintiff to protect the interests of the people of Kentucky.[3] [R. 23 at 2 ("The Attorney General's position, on behalf of the people of Kentucky, is that the Governor has overstepped the Constitution.").]  Thus, the Court will construe the present "motion to realign" as a motion for permissive intervention pursuant to Federal Rule of Criminal Procedure 24(b)(1)(B).

---

[3] Unsurprisingly, existing Plaintiffs M.O. and W.O. consent to the Attorney General's motion.  [R. 23 at 1 n. 1.]

**1**

A party must meet two requirements for permissive intervention: timeliness and a common question of law or fact.  Fed. R. Civ. P. 24(b)(1)(B).  The threshold issue is timeliness.  *Blount-Hill v. Zelman*, 636 F.3d 278, 283–84, 287 (6th Cir. 2011).  To determine timeliness, courts consider five factors:

> (1) the point to which the suit has progressed; (2) for what purpose intervention is sought; (3) the length of time preceding the motion during which the intervenor knew or reasonably should have known of her interest in the case; (4) the prejudice to the original parties due to the intervenor's failure to seek intervention sooner after recognizing her interest was implicated; and (5) any unusual circumstances weighing for or against intervention.

*Id.*  No one factor is dispositive; rather the "determination of whether a motion to intervene is timely should be evaluated in the context of all relevant circumstances."  *Stupak–Thrall v. Glickman*, 226 F.3d 467, 472–73 (6th Cir.2000).  On the present record, the Court finds that the Attorney General's motion to intervene as Plaintiff was timely.

First, all things considered, this suit has not progressed to a point that counsels against permissive intervention.  In the context of this factor, the key concern is not "the absolute measure of time between the filing of the complaint and the motion to intervene" but, instead, "what steps occurred along the litigation continuum *during* this period of time."  *Id.* at 475.  In this case, while some progress has been made—namely Plaintiffs filing a motion for preliminary injunction and the attendant hearing—the litigation has not yet proceeded past the preliminary stages.  Importantly, Attorney General Cameron moved to realign as Plaintiff prior to any discovery or any ruling on a dispositive motion.  *Cf. Zelman*, 636 at 285 (finding that the first factor weighed against the proposed intervenors where "extensive progress" had been made in the litigation, including a ruling granting in part a motion to dismiss and completion of a pretrial

conference).

Second, the Attorney General states a legitimate purpose in support of realignment as Plaintiff.  In considering the nature of the Attorney General's role, the Kentucky Supreme Court has explained more broadly that the Kentucky Attorney General has a "common-law obligation to protect public rights and interests by ensuring that our government acts legally and constitutionally."  *Commonwealth ex rel. Beshear v. Bevin*, 498 S.W.3d 355, 362 (Ky. 2016). Consistent with this role, Attorney General Cameron now seeks to enjoin enforcement of an action he believes unconstitutionally infringes on the rights of Kentucky citizens.  [R. 23 at 1–2.] By suing on behalf of "the people of Kentucky," the Attorney General can plainly protect interests that the private plaintiffs, M.O. and W.O., may not address.

Third, the brief length of time preceding the Attorney General's motion after he was joined as a Defendant weighs in favor of intervention.  This lawsuit was brought on April 2, 2020 and the Attorney General's motion to realign was filed approximately three weeks later, on April 27, 2020.  [R. 1; R. 23.]  In the current context, such a three-week turnaround is understandable, if not expected.  Just as the pandemic has produced an unprecedented governmental and medical response, it has also produced an uncertain legal landscape.  The Attorney General, like the rest of us, can be excused for taking a brief moment to get his bearings.

Fourth, there is no apparent prejudice to the original parties in permitting the Attorney General to intervene as a Plaintiff.  For their part, the existing Plaintiffs consent to the Attorney General joining their cause.  As for Governor Beshear, it appears the only possible prejudice would be reliance on a previously inconsistent position of the Attorney General.  But, until the recent motion to realign, the Attorney General had expressed no opinion as to the

8

constitutionality of the Travel Orders.  The Attorney General now seeks to argue they are unconstitutional but, as laid out below, the Governor will have a chance to address such an argument with full awareness of the Attorney General's new role as Plaintiff.

And fifth, the unusual circumstances in this case militate in favor of intervention.  As it concerns everyday American life, an executive order which instructs citizens of one state not to travel to another state is, at the very least, unusual.  And, as noted within the analysis of the second factor, Kentucky law puts the Attorney General in a unique position to protect the rights of Kentuckians.  The unique circumstances present here weigh in favor of intervention where such intervention is undertaken to ensure the constitutional rights of Kentuckians.

Lastly, timeliness aside, the final requirement for permissive intervention is the existence of a common question of law or fact.  Attorney General Cameron easily meets this requirement. As represented in his motion to realign, he seeks an identical result to the existing Plaintiffs: a ruling that the Travel Orders are unconstitutional.  The outcome of this case depends on that common question of law.  As a matter of procedure, Attorney General Cameron is entitled to intervene as a Plaintiff in this matter. *See* Fed. R. Civ. P. 24(b)(1)(B).

### III

The narrow question of whether the Kentucky Attorney General can sue the Governor of Kentucky to enjoin the enforcement of certain executive orders has been answered only in part. Importantly the Court must still address whether, as a constitutional matter, the Attorney General can establish federal standing.  That issue will be addressed by a separate order.  But before addressing that issue, and the propriety of a preliminary injunction more generally, the Court notes that the Attorney General has expressed an intent to "separately file a brief in support of the Plaintiffs' motion for a preliminary injunction."  [R. 33 at 3.]  Though the Court does not

require additional briefing, it will allow the Attorney General to do so and, in the interest of equity, will allow Governor Beshear to file an additional brief in light of the new procedural posture, if he so chooses.  That said, prompt resolution of the motion for pending preliminary injunction is necessary given the important and pressing nature of this litigation.  Either party must file any additional briefing **by the close of business Thursday, May 7, 2020**.

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1.  Attorney General Cameron's Motion to Realign, construed as a motion for permissive intervention [**R. 23**], is **GRANTED**; and

2.   Attorney General Cameron and Governor Beshear may file supplemental briefing, consistent with the directives of this Order.


This the 5th day of May, 2020.


Gregory F. Van Tatenhove
United States District Judge